## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WALKER DIGITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.  11-311-GMS |
| | ) | |
| GOOGLE INC., YAHOO! INC., AND | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GOOGLE INC.'S MEMORANDUM IN
## SUPPORT OF ITS MOTION FOR SANCTIONS
## PURSUANT TO FRCP 11

OF COUNSEL:

Michael J. Malecek
Kenneth M. Maikish
KAYE SCHOLER LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA  94306
Tel:  (650) 319-4500

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Google Inc.*

Original Service Date:  November 9, 2011
Filed & Served Date:  December 1, 2011
1034751 / 36777

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................... 2

    A.  Status Of The Case ........................................................................................................ 2

    B.  The Asserted '802 Patent ............................................................................................. 3

    C.  Google's Accused AdWords System ........................................................................... 4

    D.  Google's Efforts To Resolve This Matter ................................................................... 6

III. APPLICABLE LAW ......................................................................................................... 9

    A.  Rule 11 Imposes An Affirmative Duty On Plaintiff To Conduct A
        Reasonable Pre-Suit Analysis ...................................................................................... 9

    B.  A Plaintiff Is Required To Compare The Accused Instrumentality To An
        Objectively Reasonable Interpretation Of The Claims Of The Patent Before
        Filing A Patent Infringement Suit ............................................................................... 9

    C.  Plaintiff Bears The Burden Of Showing That It Did Perform A Reasonable
        Pre-Suit Investigation ................................................................................................ 10

IV. ARGUMENT ..................................................................................................................... 11

    A.  Walker Digital Failed To Conduct A Proper Pre-Suit Investigation ......................... 11

         1.  AdWords Does Not Provide The Ability To Place A Bid "According
             To An Amount Of Time Left In The Auction" ............................................. 11

         2.  Walker Digital's Infringement Theory Requires Construing The Term
             "Auction" As Including Multiple Auctions ................................................... 12

         3.  Walker Digital's Understanding Of "Auction" Is Not Objectively
             Reasonable ...................................................................................................... 13

         4.  This Court Does Not Require Claim Construction Prior To Sanctions ......... 16

         5.  Walker Digital Apparently Failed To Use Google's AdWords System
             Prior To Filing Suit ....................................................................................... 18

    B.  Walker Digital And Its Attorneys Failure To Conduct A Reasonable Pre-Suit
        Investigation Renders Them Both Subject To Sanctions ........................................... 19

V. CONCLUSION ................................................................................................................... 20

i

# TABLE OF AUTHORITIES

## Cases

*Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*,
    38 F.3d 1303 (3d Cir. 1994)...................................................................... 9

*Bid For Position, LLC. v. Google Inc., et al.*,
    601 F.3d 1311 (Fed. Cir. 2010).............................................................. 4-5

*Borowski v. DePuy*,
    850 F.2d 297 (7th Cir. 1988) ................................................................. 20

*Cooter & Gell v. Hartmax Corp.*,
    496 U.S. 384 (1990)............................................................................... 9

*Digeo, Inc. v. Audible, Inc.*,
    505 F.3d 1362 (Fed. Cir. 2007)............................................................. 10

*Eon-Net LP v. Flagstar Bancorp*,
    249 Fed.Appx. 189 (Fed. Cir. 2007)..................................................... 17

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011)....................................................... 10, 16

*In re Tutu Wells Contamination Litig.*,
    120 F.3d 368 (3d Cir. V.I. 1997) ......................................................... 19

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997).............................................. 10, 16, 18, 20

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004)....................................................... 9, 16, 18

*S. Bravo Sys. v. Containment Techs. Corp.*,
    96 F.3d 1372 (Fed. Cir. 1996)........................................................ 10, 16

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000)...................................................... 9, 10, 16, 18

## Statutes

Fed. R. Civ. P. 11 .............................................................................. 1, 8, 19, 20

Fed. R. Civ. P. 11(c)(1)(A) .......................................................................... 19

## NOTES ON CITATIONS

The patent-in-suit, U.S. Patent No. 7,801,802 ("the '802 patent") entitled "Method, system and computer program product for facilitating an auction behavior and automatic bidding in an auction," is attached as Exhibit 1 to the Declaration of John LaBarre (the "LaBarre Decl."). References to the '802 patent are indicated by column and line number. A reference to "3:15" means column 3, line 15.

Additional exhibits attached to the LaBarre Decl. are as follows:

| Exhibit | Description |
|---------|-------------|
| 2 | Letter dated August 3, 2011 sent to Plaintiff's outside counsel |
| 3 | The contents of http://adwords.blogspot.com/2010/08/adwords-myths-understanding-adwords.html (last visited September 15, 2011) |
| 4 | The contents of http://adwords.google.com/support/aw/bin/answer.py?hl=en&answer=142918 (last visited September 15, 2011) |
| 5 | The contents of http://www.wired.com/culture/culturereviews/magazine/17-06/nep_googlenomics?currentPage=all (last visited September 15, 2011) |
| 6 | The contents of http://www.netpaths.net/blog/anatomy-of-a-real-time-google-ppc-auction/ (last visited September 15, 2011) |
| 7 | Letter dated August 15, 2011 sent to Google in response to August 3, 2011 letter |
| 8 | The contents of http://adwords.google.com/support/aw/bin/static.py?hl=en&topic=22183&guide=21804&page=guide.cs#IBB5 (last visited September 15, 2011) |
| 9 | The contents of http://adwords.google.com/support/aw/bin/answer.py?hl=en&answer=1320536 (last visited September 16, 2011) |
| 10 | The selected portion of the prosecution history of '802 patent sent via email to Walker Digital outside counsel Marc Fenster on August 19, 2011 |
| 11 | Follow-up letter sent to Plaintiff's outside counsel on September 6, 2011 |
| 12 | Letter, dated October 6, 2011, sent by Plaintiff to Google after Google served its initial Motion for Sanctions |
| 13 | The contents of http://adwords.google.com/support/aw/bin/static.py?hl=en&answer=6312 (last visited November 3, 2011) |

# I.  INTRODUCTION

On April 11, 2011, Plaintiff brought fourteen separate patent cases in this District against more than 100 different defendants.  In this matter (one of three brought against Google on this date), Plaintiff failed to conduct a proper pre-suit investigation of its allegations against Google pursuant to FED. R. CIV. P. 11.  Google's attempts to resolve this issue through extensive conversations with Plaintiff have failed.

The claims of the '802 patent relate to an automatic bidding system in which all of the claims require that the automatic bid be placed "according to an amount of time left in the auction" and only after determining that "the highest bid in the auction is not from the bidder." (*See, e.g.*, '802 patent, 15:26-34).  Any reasonable investigation by Plaintiff would have shown that the accused product, Google's AdWords system, does not place, nor allow advertisers to place, a bid "according to an amount of time left in the auction" nor does it do so after determining that "the highest bid in the auction is not from the bidder."

Before serving and then ultimately filing this motion, Google alerted Plaintiff of these indisputable facts; facts of which Plaintiff should have already been well aware as they are available from numerous public sources.  Plaintiff responded by indicating it felt it had reasonable basis to file suit based on publicly available descriptions of Google tools that allow advertisers to adjust bids based on factors relating to timing generally, such as the time of day or promotional periods.  But Plaintiff has pointed to nothing even remotely close to the requirement in the claims of the '802 patent that bid placement be based on the "amount of time left in the auction."  When confronted with these points, Plaintiff revised its explanation of its theory of infringement, explaining that the millions of ad auctions that take place every day do not constitute "auctions" as that term is used in the '802 patent and, instead, suggesting that

an auction was the sum total of all auctions on a particular keyword that take place in a given day.  There simply is no objective basis in the patent – or elsewhere – for this position.

Google understands the severity of Rule 11 sanctions and does not seek them lightly.  However, Plaintiff should not be allowed to bring a case based on allegations of infringement that adopt objectively groundless interpretations of key claim terms and for which it appears the Plaintiff did not even attempt to use Google's accused systems prior to filing suit.  Plaintiff's failure to conduct a reasonable pre-suit investigation in this matter will require Google to incur considerable time, expense, and distraction in defending itself on a case that should never have been brought in the first place.  Rule 11 sanctions, including dismissal of this suit, should be imposed on Walker Digital and its attorneys to deter such conduct.

## II.  STATEMENT OF FACTS

### A.     <u>Status Of The Case</u>

From April to October of 2011, Walker Digital unleashed a tidal wave of patent litigation in Delaware, filing thirty-five separate patent infringement suits against over two-hundred defendants.  Google was named as a defendant in six such lawsuits.  In the instant case, Walker Digital asserts that Google's "Adwords Ad Placement Auction service" infringes the claims of the '802 patent.[1]  (Complaint, D.I. No. 1, ¶ 15.)  The case has not yet been set for an initial status conference.

Plaintiff's national counsel in this case is no stranger to Google or Google AdWords.  Russ August & Kabat, and, in particular, partners Marc Fenster and Alexander Giza, represented plaintiffs in two separate actions against Google in which Google AdWords was an accused product, including one case which went to trial in August 2010.  (LaBarre Decl., ¶ 23.)

---

[1]  Plaintiff has not yet identified which specific claims of the '802 patent it is asserting.

Thus, both should know the availability of public information regarding Google AdWords as well as how simple and inexpensive it is to sign up for an AdWords account in order to test the system.[2]

## B.     The Asserted '802 Patent

The asserted '802 patent relates to a specific type of automatic bidding system.  ('802 patent, Abstract.)  The patent contains 3 independent claims and 12 dependent claims.  Claim 1 is illustrative of the claims of the '802 patent:

> 1. A method comprising:
>
> storing a rule for automatically placing a bid by a bid generator for an item for a bidder in an auction, the rule associated with the bidder and having a condition specifying that the bid is to be placed by the bid generator according to an amount of time left in the auction;
>
> determining that the rule is satisfied;
>
> determining that the highest bid in the auction is not from the bidder; and placing the bid.

('802 patent, 15:26-35) (emphasis added).  Each of the three independent claims contains the limitation relating to the bid[3] being placed "according to an amount of time left in the auction."  Each of the three independent claims also contains the limitation that the rule must determine

---

[2]  Of course, it would not be appropriate for Plaintiff's counsel to use confidential information learned in those cases in connection with this case.  But the duty to preserve confidentiality should not excuse Plaintiff's counsel from proceeding on a theory it knows to be untenable based on information learned in connection with those prior cases.

[3]  The terms "bid" and "auction," among other terms, have specific meaning within the context of the '802 patent that will be appropriately addressed as necessary during the claim construction phase of this matter.  For the purposes of this motion, Google acknowledges that Plaintiff may use any *objectively reasonable* definition in performing its purported pre-suit investigation.

that "the highest bid in the auction is not from the bidder."  Because these limitations appear in each of the independent claims, they are limitations of each and every claim of the '802 patent.

The "time left in the auction" restriction was added by the patentee during prosecution in order to overcome the examiner's rejection of the claims over the prior art.  Specifically, during the course of prosecution, the examiner rejected all claims based on U.S. Patent No. 6,044,363 to Mori, et al. ("Mori").  In distinguishing Mori, the Patentee expressly added the "time left in the auction" restriction in order to overcome the Examiner's objection.

> Present claim **60** has been amended, and pertains to a method for automatically placing a bid for an item for a bidder in an auction.  The process now requires:
>
> > *applying a rule associated with the bidder and having a condition specifying* **that the bid is placed in a predetermined manner for the bidder according to an amount of time left in the auction;** (change highlighted)
>
> Claims **64-66** have been amended in a similar manner.  Support for such changes can be found, for example, on page 9, lines 17-19 of the application.  Thus, no new matter has been added.
>
> Claims **60 and 64-66** each now recites applying a rule that includes a condition specifying that a bid is placed for the bidder *according to an amount of time left in the auction.*  We respectfully submit that <u>Mori</u> does not teach or suggest such operation.  Although <u>Mori</u> teaches that bidders can stipulate conditions or rules before the auction commences for placing bids, such rules and conditions only concern item descriptions and/or a quantity of products and/or a price range.  There is <u>no</u> mention of including a rule that <u>requires</u> placing the bid according to an amount of time left in the auction, as in pending claims **60 and 64-66**.  Thus, Applicants respectfully submit that these claims are not anticipated.  Furthermore, as claims **61-63** directly or indirectly on claim **60**, these dependent claims should be allowable for at least the same reason.

(Ex. 10 to the LaBarre Decl.)

## C.    <u>Google's Accused AdWords System</u>

Plaintiff accuses Google's AdWords auction system of infringement.  AdWords is a Google offering that allows advertisers to choose keywords that will trigger the display of their respective advertisements in response to search queries made by users.  *Bid For Position, LLC.*

*v. Google Inc., et al.*, 601 F.3d 1311, 1312 (Fed. Cir. 2010).[4]  Google allows an advertiser to inform it of the maximum amount that it would be willing to pay Google if a user clicks on the advertisement in relation to a specific keyword/phrase.  *Id.*  This amount is referred to a "maximum cost-per-click" or "Max CPC."  *Id.*; Zavislak Decl., ¶ 2.

When a keyword or a related concept is used in a search query (for example, at www.google.com), AdWords runs an auction to determine the order in which advertisements (if any) will be shown on the search results page.  *Bid for Position*, 601 F.3d at 1312-13.  The auction process takes the advertisers' respective Max CPC which it multiplies by the advertisement's "quality score" to determine the overall "ad rank" (*i.e.*, the order of results in which the ads will be shown).[5]  Google runs a unique ad auction for each query that triggers advertisements, hundreds of millions of times a day.  (Zavislak Decl., ¶ 6.)  Because Google generally delivers search results and any corresponding advertisements in less than one second, each of the individual constituent parts of this process (*e.g.*, Google receiving the query from the user, fetching search results, and determining which advertisements to display, including running the ad auction), happens in a fraction of a second.  (*Id.*)

---

[4] Bid for Position, LLC sued Google, and others, alleging infringement of the asserted patent by Google AdWords.  In the case, Google and AOL filed a motion for summary judgment of non-infringement, which Judge Jerome Friedman granted on October 15, 2008.  The Federal Circuit affirmed on April 7, 2010.

[5] On October 3, 2011, Google announced that it would be implementing changes to this process, increasing the incorporation of ad relevance (*i.e.*, Google's measurement of the relevance to a given search of the ad shown) and landing page quality (*i.e.*, Google's measurement of the quality to a given search of the website that users are directed to when they click on a given advertisement) into the Quality Score and the auction process.  Accordingly, with these new changes, it is more appropriate to say that ad rank is a function of Max CPC and the three components of Quality Score (*i.e.*, clickthrough rate, ad relevance, and landing page quality).  (Zavislak Decl., ¶ 10.)

Google's auction is akin to a sealed bid auction; it includes only **a single round** of bidding in any given auction.  (Zavislak Decl., ¶ 2.)  This means that once Max CPCs are submitted to the auction, they do not change.  (*Id*.)  Accordingly, the system does not allow advertisers to place their "bids" "according to an amount of time left in the auction" nor does Google itself do so.  (*Id*., ¶ 3.)  This also means that no proxy or automatic bidding program can be used by advertisers to change the price of their Max CPC during the course of a given auction.  Likewise, no proxy or automated bidder can (or would need to) check whether "the highest bid in the auction is not from the bidder" because the advertiser only submits a Max CPC bid once for each auction.

**D.**     **Google's Efforts To Resolve This Matter**

On August 3, 2011, Google sent a letter (the "August 3 Letter") to Plaintiff pointing out the clear requirement of the '802 patent claims that a bid must be placed "according to an amount of time left in the auction" and seeking clarification regarding Plaintiff's basis in asserting that Google meets such a limitation.  (Ex. 2 to the LaBarre Decl.)  The August 3 Letter includes references to publicly available information sources regarding Google's ad auction systems (included as Exhibits 3-6 to the LaBarre Decl.).

Plaintiff responded on August 15, 2011 (the "August 15 Letter").  (Ex. 7 to the LaBarre Decl.)  Plaintiff did not contest Google's description of how AdWords operates or any of the facts discussed above.  Instead, Plaintiff pointed to publicly-available materials that it stated are "exemplary of the support for infringement already considered by Walker Digital," specifically pointing to Google's "Ad Scheduler" (allowing advertisers to choose specific times of day in which to bid on auctions), Google's "Budget Optimizer" (a tool for managing budgets), a tool that allows advertisers to schedule their ads to run on specific days (*e.g.*, only on weekends, or

during a special promotional cycle), and one that allows advertisers to pause poorly performing ad campaigns.  (*Id.*)  None of Google's descriptions of these systems indicate or suggest that Google is allowing Max CPCs to be placed "according to an amount of time left in the auction."  (LaBarre Decl., ¶ 22; Zavislak Decl., ¶¶ 7, 8.)

On August 19, 2011, in-house Google attorney John LaBarre again reached out to Plaintiff and laid out Google's concerns in a telephone call with Plaintiff's attorney Marc Fenster (the "August 19 Call").  (LaBarre Decl., ¶ 13.)  During this conversation, Google reiterated its concerns, explained its position with respect to Ad Scheduler and the other rule functionality pointed to by Plaintiff in the August 15 Letter, and even went as far as to point out the importance of the "time left in the auction" restriction during the prosecution history of the '802 patent.  (*Id.*)  Mr. LaBarre also provided a section of the prosecution history, including the portion cited above, to Mr. Fenster after the call.  (*Id.*; *see also* Ex. 10 to the LaBarre Decl.)

On August 29, 2011, Plaintiff responded with a different – and equally unavailing explanation of its theory of infringement than that expressed in the August 15 Letter.  During a phone call between Mr. LaBarre and Mr. Fenster (the "August 29 Call"), Mr. Fenster explained that, notwithstanding Google's numerous public descriptions of its ad auction process, Walker Digital viewed a Google ad auction not as something that occurs with each search query but rather as something that takes place over the course of an entire day.  (LaBarre Decl., ¶ 15.)  Specifically, Plaintiff indicated that it viewed an auction as the sum total of all the auctions on a given keyword in a particular day.  Plaintiff characterized each AdWords auction as a "micro-

auction," a term not found in the patent or in any of Google's publicly available descriptions of its service.[6]

On September 6, 2011, Google sent yet another letter in an effort to understand the nature of Plaintiff's purported pre-suit investigation (the "September 6 Letter").  (Ex. 11 to the LaBarre Decl.)  Google requested that Plaintiff provide a basis for its contention that an auction was the sum of all individual auctions on a given keyword in a particular day.  Google also highlighted the '802 patent's claims' requirement that the rule determine that the highest bid was not from the bidder (another aspect of the '802 patent claims not met by AdWords).  Google requested a response by September 9, 2011.  Plaintiff did not respond.

On September 19, 2011, Google served a Motion for Sanctions (along with supporting declarations and exhibits) on Plaintiff pursuant to FED. R. CIV. P. 11 (c)(2).[7]  (LaBarre Decl., ¶ 7.)  On October 6, 2011, Plaintiff sent Google a letter in which it plainly and clearly indicated that it viewed the issue as one related to claim construction (the "October Letter").  (Ex. 12 to the LaBarre Decl., at p. 5.)  As this view was materially different from what Google believed Plaintiff's position to have been, Google has taken the opportunity to re-draft its motion to address this issue.

As Plaintiff would not withdraw its claims of infringement, Google served this version of this motion on Plaintiff and its counsel on November 9, 2011.  After the 21-day safe harbor provided in FED. R. CIV. P. 11, Plaintiff still has not withdrawn its Complaint.  Accordingly, Google has filed the instant motion.

---

[6] In the October Letter, Plaintiff disputes who used the term "micro-auction."  (Ex. 12 to the LaBarre Decl.)  Google stands by its declaration.  (Labarre Decl., ¶ 15 and accompanying footnote.)

[7] In an effort not to overburden the court with paperwork, Google elected not to attach the initial motion as an exhibit.  A copy is available upon request.

## III.   APPLICABLE LAW

**A.      Rule 11 Imposes An Affirmative Duty On Plaintiff To Conduct A
          Reasonable Pre-Suit Analysis**

The Supreme Court has held that the "central purpose of Rule 11 is to deter baseless

filings" by imposing a duty on attorneys to certify that they have "conducted a reasonable

inquiry and have determined that any papers filed with the court are well grounded in fact and

legally tenable." *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).  Rule 11 requires

that before filing a complaint, Plaintiff and its attorneys make a reasonable inquiry into the

relevant law and facts.  *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d

Cir. 1994).  "An inquiry is considered reasonable under the circumstances if it provides the

party with an objective knowledge or belief at the time of the filing of a challenged paper that

the claim was well-grounded in law and fact."  *Id.* (internal citations and quotations omitted).

In the context of a patent case, given the complexity and the often extreme expense associated

with such actions, the importance of Rule 11 is magnified.  *View Eng'g, Inc. v. Robotic Vision

Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (finding that "[p]erforming a pre-filing

assessment of the basis of each infringement claim is extremely important" because "[a] patent

suit can be an expensive proposition" and "[d]efending against baseless claims of infringement

subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates").

**B.      A Plaintiff Is Required To Compare The Accused Instrumentality
          To An Objectively Reasonable Interpretation Of The Claims Of
          The Patent Before Filing A Patent Infringement Suit**

The "key factor in determining whether a patentee performed a reasonable pre-filing

inquiry is the presence of an infringement analysis."  *Q-Pharma, Inc. v. Andrew Jergens Co.*,

360 F.3d 1295, 1302 (Fed. Cir. 2004) (citing *View Eng'g*, 208 F.3d at 986).  Prior to filing a

complaint for patent infringement, Rule 11 requires the filing attorneys (1) "to apply claims of

each and every patent that is being brought into the lawsuit to an accused device," and (2) "to satisfy himself that a proper construction of the claims . . . permits argument that each element of the claims appears in the accused devices."  *Id.*; *Judin v. United States*, 110 F.3d 780, 783 (Fed. Cir. 1997); *S. Bravo Sys. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996).  Failure to perform either of these steps "should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions."  *View Eng'g*, 208 F.3d at 986 (upholding the district court's imposition of sanctions against plaintiff for failing to inspect the accused device prior to filing its infringement suit); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) (upholding the district court's imposition of sanctions against plaintiff for filing an objectively baseless infringement suit because its pre-suit investigation compared the accused products to an unreasonably broad construction of a necessary claim term).

Rule 11 requires Walker Digital to have conducted a pre-suit investigation in which it reasonably concluded that the accused Google instrumentality infringed the claims of the '802 patent.  As discussed below, Walker Digital and its attorneys' attempt at a pre-suit investigation fell critically short of their Rule 11 obligations.

**C.   Plaintiff Bears The Burden Of Showing That It Did Perform A
        Reasonable Pre-Suit Investigation**

Having brought forth these allegations of a Rule 11 violation, the burden of proof shifts to Walker Digital to demonstrate that its pre-suit investigation was reasonable.  *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007) ("Once a litigant moves based upon non-frivolous allegations for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim.").  As the Federal Circuit informed in *View Eng'g*:

> In bringing a claim of infringement, the patent holder, if
> challenged, must be prepared to demonstrate to both the court and
> the alleged infringer exactly why it believed **before filing the**
> **claim** that it had a reasonable chance of proving infringement.
> Failure to do so should ordinarily result in the district court
> expressing its broad discretion in favor of Rule 11 sanctions, at
> least in the absence of a sound excuse or considerable mitigating
> circumstances.

208 F.3d at 986 (emphasis added).  Accordingly, having brought forth its allegations of a Rule

11 violation, the burden now rests with Walker Digital to demonstrate that it did conduct a

reasonable pre-suit inquiry.  Walker Digital's representations and responses to Google's

repeated inquiry on this subject demonstrate that no such reasonable inquiry took place.

## IV.   ARGUMENT

### A.   Walker Digital Failed To Conduct A Proper Pre-Suit Investigation

*1.   AdWords Does Not Provide The Ability To Place A Bid*
*"According To An Amount Of Time Left In The Auction"*

As described above, the accused AdWords system runs a unique ad auction for each

query that triggers advertisements, millions of times a day.  (Zavislak Decl., ¶ 6.)  Each auction

is akin to a sealed bid auction; it includes only **a single round** of bidding in any given auction.

(Zavislak Decl., ¶ 2.)  Plaintiff does not — and cannot — allege that Google places bids

according to an amount of time left in a single AdWords auction.

The only instrumentalities within the AdWords system specifically named by Plaintiff

are the ad scheduler and budget optimizer tools.  (Exs. 7 and 12 to the LaBarre Decl.)  The ad

scheduler allows advertisers to adjust their Max CPC amount for a given keyword *based on the*

*time of day*.  (Zavislak Decl., ¶ 7.)  The budget optimizer allows an advertiser to specify a

maximum daily budget so that Google may manage the advertiser's Max CPCs to ensure that

the advertiser does not spend more than its maximum daily budget on advertising.[8]  (Zavislak

Decl., ¶ 8.)  **Critically, neither the ad scheduling tool nor the budget optimizer provide any**

**condition to place bids based on time left in the auction**.  (Zavislak Decl., ¶ 7, 8.)  Using

these tools, an advertiser's Max CPC may vary across different auctions, but the ad scheduler

and budget optimizer never place (or change) a Max CPC based on the amount of time

remaining in **a single AdWords auction**.  (*Id.*)

The parties do not dispute the functionality provided by Google's AdWords system or

these tools.  Plaintiff does not argue with the fact that a Max CPC is never placed according to

an amount of time left in a single AdWords auction.  The issue here is not whether a <u>single</u>

AdWords auction performs this element of the claims.  It does not.  Rather, the issue here is

Plaintiff's baseless allegation that the term "auction" is directed to multiple auctions over the

course of a single day.

    2.    *Walker Digital's Infringement Theory Requires Construing*
        *The Term "Auction" As Including Multiple Auctions*

Plaintiff's position that ad scheduler and budget optimizer provide functionality that

allows Google to place bids "according to an amount of time left in the auction" demonstrates

that its infringement theory <u>requires</u> construing the term "auction" as including multiple

auctions.  Without this construction, Plaintiff's infringement theory cannot succeed.

Plaintiff's October Letter confirms that its infringement analysis relies on this definition

of "auction."  (Ex. 12 to the LaBarre Decl., at p. 3 ("The article 'an' indicates that [an auction]

can include one or more [auctions]").)  In the October Letter, Plaintiff also confirms that its

---

[8] The daily budget tool actually runs on a monthly cycle, so an advertiser may spend more than
its daily budget in a given day, but will not spend more than its daily budget multiplied by 30.4
in any given month.  (Ex. 11 to the LaBarre Decl.)

infringement theory requires the understanding that Google's "auction" takes place over the course of a day.  (*Id*. at p. 4.)  Plaintiff purports to support this theory with evidence that the budget optimizer "spread[s] ad impressions across the day" and "runs on a daily cycle."  (*Id*.)

The only issue raised in this motion is whether this requirement, which is essential to Plaintiff's infringement theory, contains an objectively reasonable construction of "auction." Google submits that it does not.

3.    *Walker Digital's Understanding Of "Auction" Is Not Objectively Reasonable*

Plaintiff's core argument is that the "real" auction is the total of all the individual auctions for a given keyword that occur during the course of a day.  Such a notion appears nowhere in the patent and is, in fact, contrary to the patent specification and file history. Plaintiff's construction of the term "auction" is completely inspired by litigation and Plaintiff has chosen a day as the arbitrary length of the auction because budget optimizer and ad scheduler "run on a daily cycle."  With respect to Google's ads systems, at best, all Plaintiff can point to is the ability to change bids <u>between</u> auctions.  Because these facts do not meet Plaintiff's claims, Plaintiff argues that there is some other "auction" that apparently lasts one calendar day.  Plaintiff's explanation that it views an "auction" as being the total of all auctions that occur in a given day for a given keyword is completely unsupported by the patent or common sense.

Walked Digital's understanding of "auction" is explained in the October Letter where Plaintiff argues that "the article 'an' indicates that [an auction] can include one or more [auctions]."  (Ex. 12 to the LaBarre Decl., at p. 3.)  Besides being nonsensical, this definition is inconsistent with the specification and the claims.

a.    The Specification Cannot Support Plaintiff's Objectively
Unreasonable Understanding Of "Auction"

The '802 patent purports to solve a problem created by conventional "proxy bidders" —

programs that "place[] bids automatically on behalf of the bidder." ('802 patent, 1:33-34.)  The

specification explains that the use of proxy bidders in online auctions "discourage" human

bidders by "making bids appear automated and out of human control," *e.g.*, by outbidding a

person immediately after that person placed a bid. (*Id.*, 1:50-63.)  By placing bids according to

an amount of time left in the auction, the '802 patent purports to have a proxy bidder place bids

in a way that does not discourage human bidders in an online auction. (*Id.*, 2:3-7.)  The '802

patent describes many rules that may accomplish its goal. (*See id.*, 6:49 - 7:4.)  However, to

overcome a prior art reference, during prosecution the applicant was limited to a rule based on

"an amount of time left in the auction." (*See* Ex. 10 to the LaBarre Decl.)

Every embodiment described in the specification uses the term auction in a manner

consistent with the common sense definition: "an auction" consists of one, singular, auction.

(*See, e.g.*, '802 patent, 4:51 - 5:29, 8:55 - 9:8, and Fig. 8.)  Even the portion of the specification

cited by Plaintiff requires that an auction be a single auction. (Ex. 12 to the LaBarre Decl.,

citing the '802 patent, 4:46-50 ("An auction is a public or private sale in which goods or

services of a seller may be sold to *a bidder* through a bidding process. There are many kinds of

auctions which differ in the manner in which bids are submitted and in the manner in which *a*

*bid* is selected by the seller.") (emphasis added).)  If an auction actually includes many auctions

it would sell many items to more than a single bidder and select more than a single bid.[9]

---

[9] To briefly address Plaintiff's related argument, the fact that an item at an auction could be
comprised of multiple items, *e.g.*, a case of wine, does not change the definition of an auction.
Plaintiff's argument suggests that a series of independent auctions on the same type of item

(continued...)

14

        b.      The Claims Cannot Support Plaintiff's Objectively
                   Unreasonable Understanding Of "Auction" As That
                   Term Is Applied To Google's Accused Systems

The notion of placing a bid only after determining that "the highest bid in the auction is not from the bidder" does not make sense in Google's ad systems.  The very language itself contemplates the bidder has already placed a bid and is looking to adjust its bid if not already the highest bidder.  Such a notion simply makes no sense in a sealed bid type situation in which there is only a single round of bidding.  (Zavislak Decl., ¶ 2.)

By arguing that an auction is something that lasts all day, Plaintiff has attempted to cobble together a colorable argument with respect to Google's budget optimizer feature (which, taking Plaintiff's understanding of Google's systems at face value, can adjust an advertiser's bid in different auctions over the course of a day), but it renders the rest of the elements of the claims nonsensical.  Plaintiff's understanding of the term auction cannot have it both ways: either an auction is something that lasts all day (rendering nonsensical what it means to determine whether the bidder is the highest bidder and to place a bid) or the auction is something that ends once the "winner" is determined (*e.g.*, after all the bids are in and the top bidder is determined).

Said another way, the system and methods of the '802 patent contemplate an auction where there is a highest bidder for a given auction.  If an auction is understood to be what Plaintiff suggests (the sum total of all auctions on a given keyword in a particular day), what does it mean to have a highest bidder?  Plaintiff's understanding of the term auction is merely a litigation-driven construct that renders nonsensical the notion of what it means to "determin[e]

_____

(*i.e.*, selection and placement on a results page in response to a query) constitute the "auction" as that term is used in the '802 patent.  Such an argument is sophistry.

that the highest bid in the auction is not from the bidder."  Accordingly, Plaintiff's understanding is objectively baseless.

        4.      *This Court Does Not Require Claim Construction Prior To Sanctions*

The crux of Plaintiff's October Letter appears to be Plaintiff's argument that, contrary to John LaBarre's previous conversations with opposing counsel, the proper understanding of the term "auction" is, in fact, an issue of claim construction.  *See, e.g.,* the first complete paragraph of page 5 of the October Letter.   Such an understanding, however, is objectively baseless.

When comparing the claims to the accused instrumentality for Rule 11 purposes, the plaintiff must "perform an *objective evaluation* of the claim terms when reading those terms on the accused device."  *Eon-Net*, 653 F.3d at 1329 (emphasis added); *see also Q-Pharma,* 360 F.3d at 1300-1301 ("In the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.") (*citing Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002); *View Eng'g*, 208 F.3d at 986; *Judin*, 110 F.3d at 784; *S. Bravo Sys.*, 96 F.3d at 1375).  Plaintiff's attempt to interpret "auction" as that term is used in the '802 patent as somehow suggesting that each Google AdWords auction is part of a longer day-long auction is a fiction created in an attempt to fit the facts to an infringement theory.  In short, Plaintiff's interpretation of what it means to conduct an "auction" is baseless and does not constitute an objectively reasonable understanding.

In *Eon-Net*, plaintiff Eon-Net was sanctioned under FRCP 11 for comparing the accused product to an *objectively baseless* construction of its claims.  *Eon-Net*, 653 F.3d at 1328-29.  The patent-at-issue claimed a system that extracted information from a "document or

file" and input that information into a computer application. *Id*. at 1317-18. Eon-Net's position was that "document" or "file" encompassed both hard and soft (electronic) copy documents. *Id*. at 1321. The trial court held a claim construction hearing on the terms "document" and "file" and found that the specification limited the terms to only hard copy documents.[10] *Id*. at 1319-20. The trial court also sanctioned Eon-Net for failing to conduct a proper pre-filing investigation by pursuing an infringement theory that relied on an objectively baseless construction of those terms. *Id*. at 1320. Eon-Net appealed and the Federal Circuit affirmed the imposition of Rule 11 sanctions. *Id*. at 1328-29.

The court recognized that the terms "document" and "file," themselves, are ambiguous as to whether they include hard and/or soft copies, but found that the written description "repeatedly and consistently" defined the invention as extracting information from hard copy documents. *Id*. at 1321. Unlike in *Eon-Net*, the term at-issue, "auction," is not ambiguous. Plaintiff is attempting to apply a nonsensical and completely unsupported definition to the term. In other words, unlike in *Eon-Net*, where the terms at issue *could* have different meanings depending on claim construction, Plaintiff's proposed understanding of the term auction is objectively baseless and is at odds with the remaining elements in the claims.

Google submits that this issue is not an issue of claim construction. Google's position is that Plaintiff's interpretation of the term "auction" is so unreasonable that claim construction is not necessary. If the Court decides a claim construction of the term "auction" is necessary, Google requests that this dispositive issue be briefed and resolved as soon as the Court can entertain the motion.

---

[10] The trial court originally granted the motion for sanctions prior to claim construction but the Federal Circuit remanded, holding that Eon-Net was entitled to a claim construction hearing. *Eon-Net LP v. Flagstar Bancorp*, 249 Fed.Appx. 189, 194-95 (Fed. Cir. 2007).

5.  *Walker Digital Apparently Failed To Use Google's AdWords System Prior To Filing Suit*

Similarly troubling, Plaintiff has presented no indication that it took the simple and basic step of signing up for a Google AdWords account to investigate its infringement claims. The Federal Circuit has repeatedly upheld Rule 11 sanctions where a party failed to undertake such fundamental analysis.  For example, in *View Eng'g*, the Court upheld Rule 11 sanctions where Defendant failed to investigate the accused instrumentality (three dimensional vision technology) prior to filing counterclaims asserting infringement of eight patents.  208 F.3d at 985-87.  Similarly, the Federal Circuit upheld Rule 11 sanctions in *Judin*, where Plaintiff did nothing more than observe the accused instrumentality (a bar code scanner) from a distance prior to bringing suit.  110 F.3d at 784.  Specifically, the Court there found:

> In this case, prior to the filing of the suit, neither Judin or his counsel had made a reasonable effort to ascertain whether the accused devices satisfied the two key claim limitations, either literally or under the doctrine of equivalents.  No adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent.  Under these circumstances, there is no doubt that Judin failed to meet the minimum standards imposed by Rule 11, and his attorney acted unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney.

*Id.*; *but see Q-Pharma*, 360 F.3d at 1301-03 (where plaintiff bought product, read list of ingredients, and relied on the defendant's marketing and other material, investigation was deemed not sanctionable, even though plaintiff did not do a chemical analysis of the compound to learn that the accused ingredient was not actually present).

Absent any suggestion in Google's own documentation that Google's AdWords system meets the "time left in the auction system" (which does *not* exist in this case), Plaintiff's failure to test the AdWords system prior to bringing suit to investigate its allegations of infringement

is clearly sanctionable.  Nearly anyone wishing to advertise through Google's systems can do

so by signing up for an AdWords account.  (Zavislak Decl., ¶ 5.)  Nothing more is required

than an internet connection, an email address, and a minimal amount of time.  (*Id*.)  Had

Walker Digital actually signed up for an AdWords account, it would have been able to explore

the range of Google tools available to advertisers.  (*Id*.)  For negligible cost, Walker Digital

could have actually run an ad campaign and tested the functionality of Google's "ad scheduler"

and other tools firsthand.  Plaintiff's apparent failure to conduct such a simple exercise in

conducting its pre-suit investigation is inexcusable.

## B.  Walker Digital And Its Attorneys Failure To Conduct A Reasonable Pre-Suit Investigation Renders Them Both Subject To Sanctions

Rule 11 specifically states that sanctions can be either monetary or non monetary in

nature. FED. R. CIV. P. 11(c)(2).  The 1993 Advisory Committee Notes to Rule 11 state that

"the court has significant discretion in determining what sanctions, if any, should be imposed

for a violation, subject to the principle that the sanctions should not be more severe than

reasonably necessary to deter repetition of the conduct."  The Committee Notes also list options

available to courts for sanctions including "striking the offending paper; issuing an admonition,

reprimand, or censure; requiring participation in seminars or other educational programs;

ordering a fine payable to the court; [and] referring the matter to disciplinary authorities."  FED.

R. CIV. P. 11(c)(1)(A).  The Committee Notes go on to indicate that "if warranted, the court

may award to the party prevailing on the motion the reasonable expenses and attorney's fees

incurred in presenting or opposing the motion."  *See, also, In re Tutu Wells Contamination*

*Litig.*, 120 F.3d 368, 388 (3d Cir. V.I. 1997) (noting that "the time, effort, and resources

expended in bringing sanctionable conduct to light would have been unnecessary had the

sanctionable conduct never occurred," and stating that these "costs are as much a harm to a

19

party in the litigation as is the delay in the litigation or the substantive prejudice caused by the conduct").

In imposing Rule 11 sanctions, a court may allocate sanctions between an attorney and client according to their relative fault. *Borowski v. DePuy*, 850 F.2d 297, 305 (7th Cir. 1988). While it is often the attorneys who signed the pleading that are subject to sanctions, such attorneys <u>and</u> their clients may be held jointly and severally liable for filings that are not – as is the case here – well grounded in fact. *Judin* at 785.

Google requests that the Court impose sanctions on *both* Walker Digital and its attorneys as this Court deems appropriate in this matter including, but not limited to, dismissal of this matter against Google as well as Google's fees and expenses in bringing this motion and otherwise defending this lawsuit.[11]

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Google requests that this Court grant its Motion for Sanctions Pursuant to FED. R. CIV. P. 11.

---

[11] Should this matter proceed beyond this motion, Google reserves its right to seek to have this case declared exceptional and seek its attorneys fees pursuant to 35 U.S.C § 285. *See, e.g., ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368 (Fed. Cir. 2009); *Brooks Furniture Mfg. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381-82 (Fed. Cir. 2005).

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael J. Malecek
Kenneth M. Maikish
KAYE SCHOLER LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA  94306
Tel:  (650) 319-4500

By:   */s/ David E. Moore*
       Richard L. Horwitz (#2246)
       David E. Moore (#3983)
       Hercules Plaza, 6th Floor
       1313 N. Market Street
       Wilmington, DE  19801
       Tel:  (302) 984-6000
       rhorwitz@potteranderson.com
       dmoore@potteranderson.com

Original Service Date:  November 9, 2011
Filed & Served Date:  December 1, 2011

*Attorneys for Defendant Google Inc.*

1034751 / 36777

21

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 1, 2011, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on November 9, 2011 and December 1, 2011, the attached document was Electronically Mailed to the following person(s):

Richard D. Kirk
Stephen B. Brauerman
Bayard, P.A.
222 Delaware Avenue, Suite 900
Wilmington, DE 19899
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
*Attorneys for Plaintiff*

Mark A. Fenster
Alexander C. Giza
Bruce D. Kuyper
Benjamin T. Wang
Russ, August & Kabat
12424 Wilshire Boulevard 12th Floor
Los Angeles, CA  90025
mfenster@raklaw.com
agiza@raklaw.com
bkuyper@raklaw.com
bwang@raklaw.com
*Attorneys for Plaintiff*

By:   */s/ David E. Moore*
Richard L. Horwitz
David E. Moore
POTTER ANDERSON & CORROON LLP
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

1011501/36777